IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SIW HOLDING COMPANY, INC., *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 18-11579 (CSS)<br>) Jointly Administered<br>)<br>) Hearing Date: January 7, 2019 at 11:00 a.m.<br>) Objection Deadline: December 31, 2018 at 4:00 p.m.<br>) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING A STIPULATION
FOR TURNOVER OF RABBI TRUST ASSETS TO THE DEBTORS**

The debtors and debtors-in-possession in the above-captioned cases (the "Debtors") hereby move (the "Motion") for entry of an order, pursuant to sections 105(a), 363(b)(1), 541(a), and 1107(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure approving a stipulation by and among Debtor Washington Inventory Service, Delaware Charter Guarantee and Trust Company, conducting business as Principal Trust Company (the "Trustee") and Principal Life Insurance Company ("Principal Life," and together with the Trustee, "Principal"), attached hereto as **Exhibit A** (the "Stipulation") and directing the Trustee to deliver assets of the Trust (as defined herein) to the Debtors. In support of the Motion, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SIW Holding Company, Inc. f/k/a/ WIS Holding Company, Inc. (2673); WIS Holdings Corp. (4184); Western Inventory Service, Inc. (2867); Washington Inventory Service (1851); WIS International, Inc. (1762); Labor Support International, Inc. (2151); and Service Support International, Inc. (2152). The Debtors' mailing address is 9265 Sky Park Court, Suite 100, San Diego, CA 92123-4312.

IMPAC 5848606v.5

2. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363(b)(1), 541(a), and 1107(a).

## BACKGROUND

3. On July 2, 2018 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

4. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. On September 25, 2018, the Office of the United States Trustee (the "UST") appointed an Official Committee of Unsecured Creditors (the "Committee").

5. A detailed description of the Debtors' business and the reasons for filing these Chapter 11 Cases is set forth in the *Declaration of Timothy J. Bernlohr, in Support of Petitions and Initial Motions* (the "Bernlohr Declaration") which is incorporated herein by reference.

## RELIEF REQUESTED

6. By this Motion, the Debtors ask the Court for entry of an order authorizing Washington Inventory Service (the "Company") to enter into a stipulation (the "Stipulation") with the Trustee, in its capacity as trustee under the Trust Agreement dated July 1, 2005 (the "Trust Agreement"), attached hereto as **Exhibit B**, for turnover of the trust funds currently in the Trustee's possession pursuant to the Trust Agreement, less Principal's reasonable expenses; provided however that the Bankruptcy Court shall retain jurisdiction to resolve any dispute regarding the amount of such expenses.

## BASIS FOR RELIEF

7. Before the Petition Date, the Company maintained a certain non-qualified deferred compensation plan called The Executive Nonqualified Excess Plan$^{SM}$( the "NQ Plan")[2] to provide deferred compensation to a select group of executives under sections 201(2), 301(a)(3) and 401(a)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"). The NQ Plan terminated due to a change of control effective June 8, 2017. Executive employees and former employees participating in the NQ Plan shall be referred to collectively herein as the "Participants."

8. On or about July 1, 2005, the Company entered into the Trust Agreement with the Trustee to segregate assets in a trust (the "Trust") for the purpose of paying benefits to Participants in the NQ Plan. The Trust is a "grantor trust" within the meaning of subpart E, part I, subchapter J, chapter 1, subtitle A of the Internal Revenue Code, and the assets of the Trust are subject to the claims of the grantor's creditors.

9. On or about April 8, 2016, the Company entered into an agreement entitled "Nonqualified Plan Service and Expense Agreement" (the "Services Agreement")[3] with Principal Life under which Principal Life agreed to provide certain administrative services in connection with the NQ Plan.

10. The Trust Agreement expressly states that Participants hold unsecured contractual rights against the Company. The Trust Agreement also provides that, upon the Company's filing of a proceeding as debtor under the Bankruptcy Code, the principal and income of the Trust shall

---

[2] The NQ Plan amended and restated the WIS International Deferred Compensation Plan, which was effective November 1, 2012

[3] The Services Agreement is attached hereto as **Exhibit C**.

at all times be subject to the claims of the Company's general creditors. Trust Agreement, at § 1.3.

11. Further, the Trust Agreement provides that upon a declaration of insolvency by the Company, the Trust's assets shall be held for the benefit of the Company's general unsecured creditors. *Id.* at § 9.1.

12. Sections 7.2 and 9.1 of the Trust Agreement provide that the Trustee is authorized to be reimbursed out of the assets held in the Trust for its reasonable expenses incurred in the performance of its duties under the Trust Agreement. *Id.* at §§ 7.2, 9.1. The Services Agreement provides that Principal Life will be paid assorted fees for the services it provides to the Company in connection with the NQ Plan. Services Agreement, Art. I.

13. As of the Petition Date, the Debtors' books and records reflect that the Trust was funded with approximately $2,110,447.53[4] in assets (the "Trust Assets"). The value of the Trust Assets has fluctuated since that date, although no withdrawals or additions have been made.

14. The Debtors believe that the Trustee now holds the Trust Assets for the benefit of the Debtors' creditors. The Company and Principal have agreed that Principal will liquidate all Trust Assets currently in the Trustee's possession and return the proceeds to the Debtors pursuant to the Trust Agreement, less Principal's reasonable expenses. Although the Debtors owed Principal nothing as of the Petition Date, additional expenses may accrue pending the resolution contemplated by the Stipulation.

15. Thus, the Debtors seek entry of an order pursuant to sections 105 and 542 of the Bankruptcy Code, approving the Stipulation and directing Principal to liquidate the Trust Assets and remit the proceeds to the Debtors as set forth below:

---

[4] This number includes $1,015,008.76 in stock/mutual fund assets and life insurance policies with a net surrender value of $1,095,438.77.

a. The Trustee shall remit the proceeds of the Trust Assets to the Debtors, minus Principal's reasonable expenses, within fifteen (15) business days after entry of an order in form and substance acceptable to Principal approving the Stipulation, provided that no appeal, motion for rehearing or other motion for relief from such order has been filed prior to the expiration of such period. Contemporaneously with the turnover of such funds to the Debtors, Principal is authorized to apply the proceeds in full satisfaction of Principal's reasonable expenses; provided, however, in the event the Debtors object to the expenses sought by Principal, the Bankruptcy Court shall retain jurisdiction to resolve any dispute regarding the amount of said expenses.

b. Upon the receipt of the balance of the proceeds by the Debtors, the Trust Agreement and the Services Agreement shall be deemed terminated and all duties and obligations of (i) the Company and the Trustee under the Trust Agreement and (ii) the Company and Principal Life under the Services Agreement shall be terminated.

c. Upon turnover of the balance of the proceeds to the Debtors, Principal will have fulfilled its duties under the Trust Agreement and the Services Agreement in accordance with their terms and applicable law, and shall not be liable to the Debtors, any Participant or beneficiary, any creditor of the Debtors or any successors in interest to any of the foregoing, with respect to the NQ Plan, the Trust Agreement, the Trust Assets, the Services Agreement, or the Trust.

d. The Company's indemnification obligations set forth in Article VI, paragraph B.5. of the Services Agreement and in Section 3.4 of the Trust Agreement will

remain in full force and effect following the turnover of the net proceeds of the liquidated Trust Assets in the manner described herein and the subsequent termination of the Services Agreement and the Trust Agreement.

## APPLICABLE AUTHORITY

16. The commencement of a bankruptcy case "creates an estate." *See* 11 U.S.C. § 541(a). The bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a)(1).

17. The Trust Agreement expressly states that the Trust Assets are subject to the claims of the Company's general creditors. See Trust Agreement at § 9.1. Accordingly, upon commencement of the Chapter 11 Cases, the Trust Assets became property of the Company's bankruptcy estate. *See, e.g., Bank of America, N.A., v. Moglia (In re Outboard Marine Corp.)*, 278 B.R. 778 (N.D. Ill. 2002), *aff'd*, 330 F.3d 942 (7th Cir. 2003) (rabbi trust *res* is property of the estate).

18. In the seminal case on the subject, the Fourth Circuit determined the funds in a "rabbi trust"[5] do not belong to the beneficiaries, but rather to the corporation for the benefit of the debtor's creditors. *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1130 (4th Cir. 1993). In *Goodman*, the Fourth Circuit concluded that the beneficiary of a rabbi trust only possesses an unsecured claim against the company, which, upon insolvency, is to be afforded no better treatment than any of the debtor's other general unsecured creditors. *Id.* at 1127.

19. Although *Goodman* involved a conservatorship and not a bankruptcy, the Fourth Circuit's reasoning applies with equal force in the bankruptcy context. *See Moglia*, 278 B.R. at

---

[5] The Internal Revenue Service has issued a series of letter rulings referring to trusts for the benefit of Participants in non-qualified deferred compensation agreements as "rabbi trusts" because the first ruling in this area dealt with a trust formed to pay benefits to a rabbi.

792; *see also Collins & Aikman Corp. v. Northern Trust Bank of Cal., N.A. (In re Collins & Aikman Corp.)*, 2006 Bankr. LEXIS 1724 at *11 (Bankr. E.D. Mich. Aug. 9, 2006) (holding that *res* of the grantor trust was reachable by a receiver to satisfy claims of debtor's creditors).

20. Section 542 of the Bankruptcy Code requires any entity, other than a custodian, in possession, custody or control of property that (a) a debtor may use, sell or lease under section 363 of the Bankruptcy Code and (b) has more than inconsequential value, to deliver such property to the debtor. *See* 11 U.S.C. § 542.[6]

21. Because (a) the Trustee is an entity as defined in section 101(15) of the Bankruptcy Code and (b) the Trust Assets are estate property valued at approximately $2.1 million, the Trustee is required, pursuant to section 542 of the Bankruptcy Code, to deliver the Trust Assets to the Debtors. While the Trust Agreement provides that the Trust Funds shall be held for the benefit of the Company's creditors, it does not provide specific direction concerning the turnover of such funds or expressly address the Company's rights as the successor to the Trustee. Accordingly, the Debtors contacted the Trustee to discuss a process to provide an orderly liquidation and turnover of the Trust Assets to the Debtors' estates.

22. The entry of an order directing the Trustee to return the Trust Assets to the Debtors is consistent with applicable case law. *See, e.g., Goodman*, 7 F.3d at 1125 (holding that

---

[6] It is unclear whether section 543 of the Bankruptcy Code (regarding the turnover of estate assets held by a custodian) is also applicable to the Trustee. Section 543 of the Bankruptcy Code applies to custodians as defined in section 101(11) of the Bankruptcy Code. Section 101(11) of the Bankruptcy Code defines a "custodian" as "(A) a receiver or trustee of any property of the debtor appointed in a case or proceeding not under this title; (B) assignee under a general assignment for the benefit of the debtor's creditors; or (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge or property for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors." *See* 11 U.S.C. § 101(11). Subsequent to the Petition Date, the Trustee became obligated under the Trust Agreement to hold the funds in the Trust for the benefit of the Debtors' creditors. It is not clear, however, whether this constitutes "general administration for the benefit of the debtor's creditors." To the extent, however, that the Court determines that section 543 of the Bankruptcy Code, rather than section 542 of the Bankruptcy Code applies to the Trustee, the Debtors respectfully request that this motion be considered a request for turnover of the Trust Assets under section 543 of the Bankruptcy Code.

*res* of grantor trust was reachable by a receiver to satisfy claims of debtor's creditors); *In re Penn Cent. Transp. Co.*, 354 F. Supp. 408, 416 (E.D. Pa. 1973) (tax driven deferred compensation plan vulnerable in bankruptcy, and executives that participated in plan had no interest in plan funds, but held only unsecured claims against employer), *aff'd*, 484 F.2d 1300 (3d Cir. 1973), *cert. denied*, 415 U.S. 951 (1974); *In re Collins & Aikman Corp.*, 2006 Bankr. LEXIS 1724 at *8-11, 2006 WL 2310798 at *3-4 (Bankr. E.D. Mich. Aug. 9, 2006) (holding that a rabbi trust *res* was property of the estate and, thus, subject to turnover).

23. Based on the foregoing, the Debtors request that the Court approve the Stipulation and direct Principal to liquidate the Trust Assets and to deliver their proceeds to the Debtors.

## NOTICE

24. Notice of the hearing of this Motion shall be provided to (i) the U.S. Trustee; (ii) counsel for Centre Lane Partners, LLC; (iii) Retail Services WIS, Corporation; (iv) the Trustee; (v) the Participants; and (vi) all the parties that have requested notice in this proceeding pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

25. No previous motion for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the attached hereto as **Exhibit D**, granting the relief requested in the Motion and such further relief as may be just and proper.

IMPAC 5848606v.5

Dated:  December 17, 2018
       Wilmington, Delaware

**POTTER ANDERSON & CORROON LLP**

*/s/ R. Stephen McNeill*
Jeremy W. Ryan (DE Bar No. 4057)
R. Stephen McNeill (DE Bar No. 5210)
D. Ryan Slaugh (DE Bar No. 6325)
1313 North Market Street, Sixth Floor
P.O. Box 951
Wilmington, DE  19801
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192
Email:  jryan@potteranderson.com
        rmcneill@potteranderson.com
        rslaugh@potterandercon.com

*Counsel for the Debtors*

IMPAC 5848606v.5